UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KENNETH SMITH, No. 98-B-1337

        Petitioner,

    -v-                           03-CV-6636 MAT
                                         **ORDER**
DALE ARTUS, Superintendant
of Clinton Correctional Facility

        Respondent.

_____

### INTRODUCTION

Petitioner Kenneth Smith ("Smith") has filed a *pro se* petition (Docket No. 1) seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Following a jury trial, Kenneth Smith was found guilty of Robbery in the First Degree (Penal Law § 160.15), two counts of Robbery in the Second Degree (Penal Law § 160.10), Assault in the Second Degree (Penal Law § 120.05), Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02), Unauthorized Use of a Vehicle in the First Degree (Penal Law § 165.08), Grand Larceny in the Third Degree (Penal Law § 155.35), Criminal

---

[1] This matter has been re-assigned to the undersigned.

Mischief in the Third Degree (Penal Law § 145.14), and Reckless Endangerment in the Second Degree (Penal Law § 120.20).

This conviction stems from an incident that occurred at the intersection of Broadway Street and Jefferson Avenue in the City of Buffalo. Shortly after 11:00am on December 24, 1996, Robert Johnston ("Johnston"), a service technician for Pay-Tel, parked his company van to service a pay phone near the intersection of Broadway and Jefferson in the City of Buffalo. T. 365, 371.[1] As Johnston accessed the pay phone, Smith approached him and demanded the keys to his van. When Johnston refused, Smith pushed him in the chest. Smith then pulled out a gun, which he pointed at Johnston. T. 373-374. Upon seeing the gun, Johnston ran into the street in an attempt to summon help. T. 375. A woman in a car saw Johnston, and opened the passenger door to her vehicle for him to get in. As Johnston tried to enter the car, Smith blocked access to the door with his body. Johnston began to run when Smith grabbed him and hit him in the back of the head with the gun. T. 378. Stunned from the blow, Johnston turned to face Smith, who then hit him over the top of the head, causing him to fall and temporarily lose consciousness.

John Manzella ("Manzella"), a United States Army recruiter, was in his car in the area of Broadway and Jefferson when he

---

[1] Citations to "T.___" refer to the trial transcript.

witnessed Smith's attack on Johnston.  T. 38, 41-43.  When he saw Smith pick up Johnston's keys from the ground, enter the white van, and drive away, he gave chase in his car while calling 911 from his mobile phone.  T. 36-50.  He later identified Smith as Johnston's attacker at the scene of Smith's arrest.

Buffalo Police Officer Nathanial Wright ("Wright" or "Officer Wright") was off-duty on December 24, 1996 in the vicinity of Broadway and Jefferson, when he observed contact between the van that Smith was driving and Manzella's car. Maneuvering his car into oncoming traffic, Wright got out and approached Smith's driver's side window where he displayed his badge and ordered Smith to pull over.  T. 161.  Smith ignored this request and continued to drive down Jefferson Avenue.  Both Wright and Manzella pursued the white van until it crashed into a tree in a vacant lot on Mortimer Street, where Smith jumped out and ran through several yards before the two men lost sight of him.  T. 164-165.

Officer Wright proceeded back to Jefferson and Broadway, where he met up with Manzella and began to drive around looking for the fleeing suspect.  Manzella described the perpetrator as a thin black male, about six feet tall, wearing a longer-than-knee-length black coat and knit cap with a Nike emblem on it.

T. 99, 47, 68, 126. Wright described the suspect as about five-feet-nine to five-feet-ten inches tall, with a medium build, wearing a mid-length black coat.  T. 167.  In response to several 911 calls, police converged at 320 Monroe Street and entered the building, where Smith was apprehended.[2]  Upon his seizure, Smith was clad in a hooded sweatshirt and light-colored jacket, which was muddy.  T. 294, 296.  At trial, Buffalo Police Officer Jimmie Adams ("Officer Adams") testified that former Officer Carl Fleming ("Officer Fleming") discovered a black down coat and knit cap lying underneath a rock by a house directly to the rear of 320 Monroe Street.  T. 263-264.  Adams described the length of the coat as slightly below the waist.  T. 264. Although the clothing had been taken into police custody, the prosecution never produced the clothing at trial.  T. 125.

Both Manzella and Wright identified Smith as the perpetrator outside of 320 Monroe Street, approximately fifteen minutes after the chase, when Smith was apprehended.  The victim, Johnston, was taken by ambulance to South Buffalo Mercy Hospital.  Police intercepted the ambulance and displayed Smith to Johnston; Johnston identified Smith as the suspect.  T. 385-386.

---

[2] At his arrest, Smith gave police the name "Kenneth Smith" with a date of birth of December 7, 1967.  It was later determined that Smith's real name and date of birth was "Raymond E. Smith", April 8, 1965.

Johnston testified via videotape as a "special witness" pursuant to N.Y. Crim. Proc. Law ("C.P.L") § 190.32 in lieu of appearing at the Grand Jury proceedings. During that procedure, Johnston was shown a photograph of a Kenneth Smith, born December 7, 1967, and not of Raymond E. Smith, the actual suspect involved the robbery. Johnston identified the person in the photograph as the perpetrator of the robbery. T. 402. Due to Johnston's misidentification, the People accordingly instructed jurors not to base their decision on the victim's identification, but only on the identification of the other two witnesses. T. 5, 6.

A <u>Wade</u> hearing was conducted on September 15, 1997.[3] The trial court found that the three show-ups (identification of Smith by Manzella, Wright, and Johnston) were not suggestive, and they occurred promptly. Further, the in-court identification could be supported by the pre-trial show-up evidence, and the court would therefore not suppress identification testimony stemming from the show-up.

The jury found Smith guilty on all charges and a verdict was entered on May 15, 1998. The trial court sentenced Smith as a persistent violent felony offender to an indeterminate term of imprisonment of twenty-five years to life for the conviction of

---

[3] <u>United States v. Wade</u>, 388 U.S. 218 (1967) (due process clause precludes states from obtaining evidence through unduly suggestive identification procedures).

Robbery in the First Degree and to lesser concurrent indeterminate terms for the other offenses.

While his direct appeal was pending, Smith collaterally attacked his conviction in state court. On February 1, 1999, Smith filed a motion pursuant to C.P.L. § 440.10 seeking to vacate his conviction, alleging: (1) that material evidence presented at trial was known by the prosecution to be false; and (2) improper and prejudicial conduct by the Prosecution. The latter is comprised of the People's failure to disclose Johnston's grand jury identification until subsequent to the Wade hearing, and the complete failure to disclose misidentification by three other individuals.[4] Smith's first claim was denied, and his second claim relating to Prosecution's delayed disclosure of the "misidentification" by Johnston was also denied as sufficient facts appeared in the record to permit Appellate review, and appeal was pending at that time.[5]

On direct appeal, Smith's appellate counsel raised ten issues, four of which are raised in the instant petition. The Appellate Division, Fourth Department, modified the judgment by reducing Smith's conviction of Grand Larceny in the Third Degree to the lesser- included offense of Petit Larceny and vacated the sentence imposed thereon. His conviction was unanimously

---

[4] Only one individual, Robert Johnston, wrongly identified the suspect.
[5] Pursuant to New York Criminal Procedure Law § 440.10(2)(c).

modified on the law and as modified affirmed on December 21, 2001. <u>People v. Smith</u>, 289 A.D.2d 1056 (4th Dept., 2001). The Appellate Division held: (1) Smith was not denied right to confront witnesses based on state's failure to preserve <u>Brady</u> material, and the adverse inference charge was proper; (2) suppression of identification testimony of the eyewitnesses was not warranted; (3) the trial court's error in admitting the victim's show-up identification of defendant was harmless; and (4) that viewed in totality, Smith was afforded meaningful representation. <u>People v. Smith</u>, 289 A.D.2d 1056, 1058. Leave to appeal to the Court of Appeals was denied on April 1, 2002. <u>People v. Smith</u>, 98 N.Y. 2d 641 (2002).

On October 24, 2002, Smith brought a second C.P.L. § 440.10 motion for *vacatur* based on an alleged deprivation of effective assistance of counsel. Since the issue of ineffective counsel was already found by the Appellate Division to be without merit, the Supreme Court denied Smith's motion on June 11, 2003. C.P.L.440.10(2)(a). The court further noted that Smith failed to raise specific claims of ineffectiveness on direct appeal despite there being sufficient facts contained in the record. C.P.L.440.10(2)(c). (State Court Records, Memorandum and Order dated June 11, 2003). Smith then filed a petition for habeas relief in this Court, setting forth seven grounds for habeas relief. (Docket No. 1).

Respondent answered the petition, asserting that none of Smith's claims have merit, and that all were "rejected either by the appellate court in his direct appeal or by the trial court in his post-verdict motion." Resp't Answer at 6 (Docket No. 9). In his Traverse ("Trav.") dated May 24, 2004, Smith consented to dismissal of three of the seven claims. Trav. at 2. (Docket No. 14). The remaining habeas claims include: (1) the People's failure to preserve evidence denied Smith his right to a fair trial; (2) the identification testimony deprived Smith of his due process rights; (3) the trial court improperly charged the jury on "dangerous instrument" thereby impermissibly amending the indictment; and (4) ineffective assistance of trial counsel.[6]

For the reasons set forth below, the petition is denied.

## DISCUSSION

### I.  Exhaustion Requirement

There is no question that Smith has exhausted his available state court remedies.  See 28 U.S.C. § 2254(b)(1); Picard v. Connor, 404 U.S. 270 (1971); Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990); see e.g. Diaz v. Mantello, 115 F.Supp.2d 411, 416 (S.D.N.Y. 2000) ("a petitioner must fairly present his federal claims to the highest state court from which a decision can be had, informing the court of the factual and legal bases

---

[6] Smith's claim for ineffective assistance of counsel is comprised of seven underlying grounds.

for the claims asserted" (citations omitted).  As noted, through appellate counsel, Smith raised on direct appeal the same claims he now raises in this petition.  His motion to leave to appeal to the New York Court of Appeals was denied.  Respondent concedes that Smith has properly exhausted all of the claims raised in the present habeas petition.  Resp't Answer at 6 (Docket No. 9).  Accordingly, this Court finds that Smith has exhausted his available state court remedies.

## II.  Procedural Default

Smith has assailed trial counsel's performance on myriad grounds.  First, on the habeas petition (Docket No. 1), Smith has alleged the following claims: (1) trial counsel failed to object to identification testimony at the <u>Wade</u> hearing; (2) trial counsel failed to object to the prosecutor's summation, insofar as it made reference to Smith's oral statement to Detective Jordan that, "I'm gonna beat it"; (3) counsel's failure to request a curative instruction regarding the prosecutor's comment that he could not cross-examine Smith regarding the aforesaid statement; (4) failure to object to the court's dismissal of a prospective African-American juror; (5) failure to object to the particular language used by the court in giving a "no adverse inference" instruction to the jury; (6) failure to request a jury instruction on the affirmative defense

to robbery; and (7) failure to challenge the constitutionality of Smith's predicate felonies.[7]

The Respondent submits that several of Smith's ineffective assistance of counsel claims are procedurally defaulted because the trial court, in disposing of Smith's second motion to vacate the judgment, relied upon a state procedural bar rule, C.P.L. § 440.10(2)(c).[8] A federal court may not review a federal question on habeas review if the state court's "decision rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. 255, 261 (1989) (citations and internal quotation marks omitted). "[A] procedural default does not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Tankleff v. Senkowski, 135 F.3d 235, 247 (2d Cir. 1998) (quoting Coleman v. Thompson, 501 U.S. 722, 735 (1991)); see also Harris, 489 U.S.

---

[7] This Court notes that through counsel, in his appellate brief on direct appeal, Smith raised the same claim as number one (1) above.  The Appellate Division did not address the instance of ineffectiveness specifically, but ruled generally that Smith received meaningful representation.  As such, this claim is not subject to the procedural bar and will be reviewed on the merits.

[8] "Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when: (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]" N.Y. Crim. Proc. Law § 440.10(2)(c).

at 264 n. 10 ("[A]s long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas."). The bar on habeas review resulting from a procedural default applies even where the state court issues an alternative holding addressing a procedurally defaulted claim on the merits. See, e.g., Harris, 489 U.S. at 264 n. 10; Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam).

A procedural bar forecloses federal habeas review only where it constitutes both an "independent" and "adequate" state law ground for deciding the claim. In the present case, it is clear from the state trial court's decision that the court was relying on an "independent" state procedural rule (i.e., C.P.L. § 440.10(2)(c)) and not on any rule of federal law in denying the motion to vacate with respect to Smith's claims. Thus, it only remains to be determined whether the rule relied upon was "adequate" to support the decision.

A procedural bar is "adequate" if it is based on a rule that is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). Whether application of the procedural rule is "firmly established and regularly followed" must be judged in the

context of "the specific circumstances presented in the case[.]" <u>Cotto v. Herbert</u>, 331 F.3d 217, 240 (2d Cir. 2003) (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 386-87 (2002)); <u>Hathorn v. Lovorn</u>, 457 U.S. 255, 263 (1982) ("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims.").

Claims two (2) through seven (7) were raised in various forms in Smith's motion to vacate the judgment pursuant to C.P.L. § 440.10. The trial court rejected them as without merit, and also because they could have been raised on direct appeal, invoking C.P.L. § 440.10(2)(c). The Court finds that the procedural grounds proffered by the trial court satisfy the "adequacy" standard given the circumstances presented in the instant case with respect to these ineffective assistance claims. The Court notes that, under New York law, ineffective counsel claims involving matters *outside* the record generally must be pursued by way of a C.P.L. § 440.10 motion. New York courts have held that some ineffective assistance claims are "not demonstrable on the main record" and are more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record. <u>Sweet v. Bennett</u>, 353 F.3d 135, 140 (2d Cir. 2003) (citing <u>People v. Harris</u>, 109 A.D.2d 351, 360 (2d Dept. 1985).

Here, the ineffective assistance claims regarding trial counsel's failure to make proper objections and challenge the validity of his prior convictions are based on matters within the trial record. As such, it appears that the claims were properly the subject of a C.P.L. § 440.10 motion to vacate. The Court cannot see any reason why appellate counsel would have needed an evidentiary hearing or other information outside of the trial record in order to develop these grounds. See Sweet v. Bennett, 353 F.3d at 140 ("However, the alleged error that is the basis for Sweet's ineffectiveness claim was particularly well-established in the trial record. Trial counsel plainly failed to object on inconsistency grounds to charging the counts in the conjunctive. Sweet has not offered a reason, and we see none, suggesting that appellate counsel would have needed a new evidentiary hearing to develop this claim.") (citing Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (finding that the trial record provided a sufficient basis for the ineffective assistance claim on trial counsel's failure to object to a jury charge, and so C.P.L. § 440.10(2)(c) was an adequate and independent basis for denying such a claim); Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) (holding that C.P.L. § 440.10(2)(c) barred collateral attack on trial counsel for failing to object on double jeopardy grounds; defendant unjustifiably failed to raise the ineffective assistance issue

on direct appeal). Accordingly, the trial court was correct in concluding that Smith unjustifiably failed to argue these ineffective assistance claim on direct appeal despite a sufficient record, and consequently waived the claim under C.P.L. § 440.10(2)(c). Accordingly, these claims are procedurally defaulted for the purposes of federal habeas review.

A procedural default will "bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. at 262 (citations omitted); accord Coleman, 501 U.S. at 749-50; Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995).

Smith has not demonstrated "cause" that would excuse his failure to raise this issue in his direct appeal, nor has he shown "prejudice" attributable thereto. Similarly, Smith has not made a showing of "actual innocence," which is necessary in order to establish that there would be a "fundamental miscarriage of justice" if the Court fails to consider the merits of the claim. See, e.g., Calderon v. Thompson, 523 U.S. 538, 559 (1998); accord Murray v. Carrier, 477 U.S. 478, 496-97

(1986); <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002).  The court finds that Smith's claim of ineffective assistance of counsel is procedurally barred and he has not shown cause or prejudice to overcome such bar.

## III. Merits of Remaining Claims

### A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 375-76 (2000). An "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim. <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 313 (2d Cir. 2000). Federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Errors of state law are not subject to federal habeas review. <u>See</u>, <u>e.g</u>., <u>Estelle v.</u>

<u>McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1970).

Smith's remaining claims were adjudicated on the merits by the Appellate Division, Fourth Department.[9]  People v. Smith, 289 A.D.2d 1056 (2001).  The court now turns to an analysis of Smith's four (4) habeas claims on the merits.

### 1. Violation of Prosecutor's *Brady* Obligations

Smith contends that the prosecution deprived him of a fair trial under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) because of the failure to preserve the hat and coat recovered from the rear of the home where he was arrested.[10]

In a series of pre-trial motions, defense counsel made a general <u>Brady</u> demand seeking exculpatory evidence and a demand for any property seized at the scene of the alleged offense.  In response, the prosecutor filed an Answering Affidavit in which he denied being aware of or in possession of <u>Brady</u> material and in which he responded that "a coat and skull cap were taken from a rear yard at 320 Monroe Street." Respt' Memorandum of Law ("Mem.") at 2. (Docket No. 11).  During the testimony of Manzella, the prosecutor elicited that at the time of his attack

---

[9] A state court "adjudicates" a petitioner's federal constitutional claims "on the merits" when it disposes of the claim 'on the merits' and reduces its disposition to judgment." <u>Norde v. Keane</u>, 294 F.3d 401, 410 (2d Cir. 2002) (citing <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001).
[10] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (suppression by prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of prosecution).

on Robert Johnston petitioner was wearing a "three-quarter length black jacket, a Nike hat and a hoodie." T. 47. Manzella recalled that when petitioner was removed from the rear of the 320 Monroe Street, he was no longer wearing the jacket and hat, but wore only the hooded sweatshirt. T. 57. He testified that he later saw the black jacket and hat petitioner had been wearing at the time of the attack when they were brought out by the police from the rear of 320 Monroe Street. T. 57, 94.

On cross-examination of Manzella, trial counsel asked the prosecution to produce the hat and coat for the jury. At that time, the prosecutor revealed that the police had failed to preserve them, prompting an objection by defense counsel. T. 125-126. Subsequently, Officer Wright described petitioner as wearing a "mid-length black coat and hat." T. 167. Like Manzella, he was present when petitioner emerged from the rear of 320 Monroe without the hat and coat. T. 169. Officer Adams testified that he and his partner Officer Fleming were assigned to search the vicinity of 320 Monroe Street for clothing and a weapon. T. 262-263. He recalled that Fleming found the coat and hat under a rock by a fence in the rear of 320 Monroe Street. T. 264.


At the close of the People's proof, trial counsel moved to dismiss the indictment arguing that petitioner had been deprived

of possible exculpatory material and that the hat and coat were material evidence. T. 453. In denying the request the court noted that Smith's argument to dismiss the indictment would have been stronger if he had been wearing the hat and coat at the time of his arrest, instead of it being found under a rock in the rear of the premises. T. 456. Relying on People v. Gibbs, 85 N.Y.2d 899 (1995), the court advised defense counsel that it would give the jury a permissive inference charge concerning the evidence. The court also pointed out that defense counsel had used the loss of the evidence to his advantage by arguing the incompetence of the police and casting reasonable doubt on the proof. Additionally, it commented that petitioner never requested the clothing until the conclusion of the testimony of the first witness. T. 493. The Appellate Division, Fourth Department agreed that the failure to preserve the hat and coat did not create reasonable doubt that did not otherwise exist, and the court's adverse charge alleviated any prejudice to Smith. Smith, 289 A.D.2d at 1057-1058.

Here, Smith cannot establish the required components of a Brady violation, i.e., that the undisclosed evidence must have been favorable to the accused; the state must have suppressed the evidence, either wilfully or inadvertently; and prejudice to the petitioner must have ensued. Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "Evidence is favorable to the accused if it

either tends to show the accused is not guilty or impeaches a prosecution witness." Boyette v. LeFevre, 246 F.3d 76, 90 (2d Cir. 2001) (citing United States v. Bagley, 473 U.S. 667, 676 (1985)). Prejudice, in the Brady context, requires a showing that there is a "reasonable probability" that the outcome of the trial would have been favorable to petitioner, had the material been disclosed. Bagley, 473 U.S. at 682 ("The suppression of exculpatory documents does not cause a constitutional violation unless the documents are material, i.e., 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"); accord, e.g., Boyette v. Lafevre, 246 F.2d 76 (2d Cir. 2001).

Smith claims the missing evidence speaks to the issue of identification on multiple bases: (1) that eyewitnesses provided a description of the perpetrator wearing a black coat and hat, but when Smith was arrested, he was not wearing either garment; (2) there exists a possibility that the coat would not fit him, but was unable to be proven at trial absent the coat; (3) the coat is relevant to the accounts given by the eyewitnesses as to how the gun was concealed in the coat's sleeve; and (4) defense counsel did not have the opportunity to test the coat to determine whether blood had been present from the attack.

In this case, Smith has not demonstrated that the withheld evidence was favorable to his defense. Respondent notes in his memorandum of law that "had the clothing been present in court, it would merely have served to reinforce the People's proof, since the clothing described by the witnesses as being worn by petitioner and was recovered at the rear of the home from which petitioner was apprehended." Resp't Mem. at 2. (Docket No. 11). Further, defense counsel, on cross-examination and on summation, discussed the absence of the evidence and emphasized the People's responsibility for its loss and the potential impact on the defense. T. 177, 218, 258, 268, 326, 521.

To the extent that Smith may be alleging a claim under <u>Youngblood v. Arizona</u>, 488 U.S. 51, 58 (1988), based on the prosecution's failure to preserve the hat and coat, the Court finds that it is without merit. When the state suppresses or conceals "material" exculpatory or impeachment evidence, the good or bad faith of the prosecutor is irrelevant. <u>Illinois v. Fisher</u>, 540 U.S. 544, 547 (2004) (citing <u>Brady v. Maryland</u>, 373 U.S. at 87; <u>United States v. Agurs</u>, 427 U.S. 97 (1976)). If the state fails to preserve evidence that is only "potentially useful" to the defendant, on the other hand, this failure does not violate the defendant's due process rights unless the defendant can demonstrate bad faith on the part of the state. <u>Illinois v. Fisher</u>, 540 U.S. at 547-48 (citing <u>Arizona v.</u>

<u>Youngblood</u>, 488 U.S. at 58 ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.")). Smith asserts that the loss of the hat and coat by the police was "intentional" and "negligently lost", but makes no real suggestion of bad faith on behalf of the police officers who had custody of the clothing. Trav. at 9-10. Further, testimony from the police officers indicated that the loss of the evidence was inadvertent.

For the reasons given above, there is no reasonable probability that the outcome of Smith's trial would have been different had the clothing been properly preserved by the state. Smith's claim based on the prosecution's <u>Brady</u> violation is dismissed. And, therefore, the state's determination was not contrary to, or involved an unreasonably application of clearly established federal law.

### 2.  Improper Identification Testimony

Smith asserts that his Due Process and Sixth Amendment rights were violated by both an allegedly suggestive post-incident show-up by two eyewitnesses (Manzella and Wright) and the victim (Johnston), and  the identification testimony derived from the show-up procedures. Pet. at 30 (Docket #1). Specifically, Smith contends: (1) that  he was handcuffed and

surrounded by police, (2) witnesses knew they were viewing a suspect, and (3) there was a possible joint-viewing of him.

A criminal defendant's right to due process includes the right not to be the object of pretrial identification procedures that are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968); accord Manson v. Braithwaite, 432 U.S. 98, 106 n. 9 (1977); Neil v. Biggers, 409 U.S. 188, 198-200 (1972); United States v. Eltayib, 88 F.3d 157, 166-67 (2d Cir.), cert. denied, 519 U.S. 1045 (1996). In determining whether a particular procedure is unduly suggestive, the reviewing court must consider the totality of the circumstances. Manson, 432 U.S. at 113-14; Eltayib, 88 F.3d at 167.

The Second Circuit Court of Appeals has adopted the following two-step inquiry to evaluate the constitutional permissibility of in-court identification testimony based upon out-of-court pretrial identification procedures:

> [(1)] [D]etermination of whether the identification process was impermissibly suggestive and, if so, whether it was so suggestive as to raise "a very substantial likelihood of irreparable misidentification."

> [(2)] If pretrial procedures have been unduly suggestive, a court may nonetheless admit in-court identification testimony if the court determines it to be independently reliable. The

> court should consider the reliability of the
> identification in light of the opportunity of
> the witness to view the criminal at the time of
> the crime, the witness' degree of attention, the
> accuracy of [the witness'] prior description of
> the criminal, the level of certainty
> demonstrated at the confrontation, and the time
> between the crime and the confrontation.
> Against these factors is to be weighed the
> corrupting effect of the suggestive
> identification itself. For both pretrial and
> in-court identifications, the linchpin of
> admissibility is reliability. However, if
> impermissibly suggestive procedures are not
> employed, "independent reliability is not a
> constitutionally required condition of
> admissibility, and the reliability of the
> identification is simply a question for the
> jury."

United States v. Wong, 40 F.3d 1347, 1359 (2d Cir. 1994)
(citations omitted), cert. denied, 514 U.S. 1113 (1995); accord
Dunnigan v. Keane, 137 F.3d 117, 128 (2d Cir.), cert. denied,
525 U.S. 840 (1998); see also United States v. Taveras, 1995 WL
600860, at *5 (S.D.N.Y. October 11, 1995) ("If pretrial
procedures are not suggestive, the identification is 'generally
admissible without any further reliability inquiry.' ").

The allegations of suggestiveness arise from two separate
show-up procedures. Upon Smith's arrest, Officer Jordan put
Smith in handcuffs and brought him outside the residence at 320
Monroe Street. Approximately four other officers were near
Smith by that time. W. 43-44.[11] Manzella saw Smith first and

---

[11] Citations to "W.__" refer to the Wade hearing transcript.

without prompting stated, "Yeah, that's him." W. 44. Wright, the off-duty police officer, also identified Smith without prompting, and did not do so until the jacket and hat were discovered at the rear of the home. W. 43.

Detective Jordan further testified that while at 320 Monroe, he received a call that the victim was in an ambulance at Clinton Street and Jefferson Avenue and would be able to identify the attacker. W.46. Jordan took the handcuffed petitioner in his unmarked car to the rear of the ambulance. W.46. Johnston, who was lying on a stretcher, sat up, looked at Smith, and stated, "Yeah, that's him." W. 47. Jordan testified that he was in plain clothes, that no other police officers were present and no additional clothing had been put on petitioner prior to Johnston's identification. Less than 10 minutes had elapsed from the time of the call to Johnston's identification. W. 47.

In denying Smith's motion, the trial court found all three witnesses credible and that the show-up procedures were not suggestive. WD. 3-11[12]. Specifically, the court found that the show-up occurred promptly and that both Manzella and Wright had an independent basis for their identifications.

On appeal, the Appellate Division, Fourth Department held that the trial court properly denied Smith's motion to suppress

---

[12] Citations to WD.__" refer to the transcript of the Wade hearing decision.

the identification testimony of Manzella and Wright, ruling as

follows:

> The court properly denied that part of
> defendant's motion seeking to suppress the
> identification testimony of the two
> eyewitnesses. Contrary to defendant's
> contention, "[t]he circumstances that defendant
> was handcuffed behind his back and in the
> presence of police officers, and that the
> [witnesses knew they] would be viewing a
> suspect, did not render the [showup
> identification] procedure unduly suggestive"
> (<u>People v. Edwards</u>, 259 AD2d 343, 344, <u>lv denied</u>
> 93 NY2d 969; <u>see</u>, <u>People v. Clark</u>, 280 AD2d 979,
> 980). Even assuming, *arguendo*, that one witness
> was present when another witness identified
> defendant, we conclude that the procedure was
> still "tolerable in the interest of prompt
> identification" (<u>People v. Johnson</u>, 221 AD2d
> 1016, 1017; <u>see</u>, <u>People v. Jenkins</u>, 175 AD2d
> 648, 649, <u>lv denied</u> 78 NY2d 1012; cf., <u>People v.</u>
> <u>Adams</u>, 53 NY2d 241, 248-249). We agree with
> defendant that the court should have suppressed
> the showup identification of defendant by the
> victim. "[O]nce [the] initial showup provided
> the police with an immediate identification of
> the alleged perpetrator[ ] as well as probable
> cause to place [him] under arrest, no 'exigent
> circumstances' existed for the subsequent
> showup" (<u>People v. Rayford</u>, 158 AD2d 482, 484;
> see, <u>People v. Johnson</u>, 169 AD2d 779, 781, <u>lv</u>
> <u>denied</u> 77 NY2d 996). The error, however, is
> "harmless beyond a reasonable doubt" (<u>People v</u>
> <u>Crimmins</u>, 36 NY2d 230, 237).

<u>People v. Smith</u>, 289 A.D.2d 1056, 1057-58 (4th Dept. 2001).


Based on the facts in the record, Smith was apprehended in

close proximity to the scene of the crime and the time that had

elapsed between the time of the attack and the show-up (10 to 15

minutes) within acceptable boundaries.  United States v. Butler, 970 F.2d 1017, 1021 (2d Cir. 1992); cert. denied 506 U.S. 980; United States v. Sanchez, 422 F.2d 1198, 1999 (2d Cir. 1970) cert denied 406 U.S. 927.  That Smith was seen handcuffed or standing close to police officers does not render the show-up infirm or create a substantial likelihood that petitioner would be mis-identified.  Jones v. Strack, 1999 WL 983871 (S.D.N.Y).

Based on the analysis set forth above, Smith cannot demonstrate that the state court's findings with respect to his motion to suppress the identification testimony resulted in a decision that was contrary to clearly established federal law, was based on an unreasonable determination of the facts, or otherwise caused his conviction to be obtained "in violation of the Constitution or laws or treatises of the United States . . . " 28 U.S.C. § 2254.  Accordingly, it is the conclusion of this Court that Smith is not entitled to habeas corpus relief on the ground that the trial court improperly admitted the eyewitness identification evidence, and therefore, this claim is dismissed.

### 3.  Improper Jury Charge

Smith contends that by charging the jury under second degree assault and third degree weapon possession, that the People did not have to prove that the "dangerous instrument" involved in the offenses was an operable firearm, the court erroneously expanded the prosecution's theory of the case and

violated his constitutional right to be tried on charges preferred by the Grand Jury. Pet. 33-34 (Docket No. 1). Smith also argues that the court "erroneously engrafted" the "what appeared to be a firearm" language from the first degree robbery charge, instructing the jury that they could convict if the People proved the object used during the robbery "appeared to be a firearm." Pet. at 35.

A habeas petitioner has a high hurdle to clear before obtaining relief based on an allegedly infirm jury instruction. In reviewing the propriety of the challenged instruction, the habeas court must ask "whether the ailing instruction by itself so affected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973); accord, e.g., DelValle v. Armstrong, 306 F.3d 1197, 1200-01 (2d Cir. 2002).

Under the fourth count of the indictment, Smith was charged with second degree assault, in that "with intent to cause physical injury to another person, caused such injury to Robert Johnston by striking him with a dangerous instrument, to wit, a firearm." Count five of the indictment charged Smith with third degree weapon possession in that Smith "feloniously possessed a dangerous instrument, to wit, a firearm with intent to use the same unlawfully against another, to wit: Robert Johnston." (State Court Records, Indictment No. 96-3046-001). During the

pre-charge conference, the court advised the parties that it intended to charge that the People must prove that Smith used and possessed a dangerous instrument. T. 505. The court refused to charge that the People had to prove that the dangerous instrument was an operable firearm, reasoning that the firearm was an "added allegation that went beyond what was necessary." T. 505. Whether or not the handgun was operable is not, by statute, a material element of second degree assault or third degree weapon possession. N.Y. Penal Law §§ 120.05, 265.02. Nowhere is there a requirement that a dangerous instrument be "operable" for either crime. Respondent is correct in asserting that "There is no doubt that the crimes charged by the trial court were the same criminal transactions for which the grand jury intended to indict petitioner." Resp't Mem. at 39 (Docket No. 11).

Viewing the charge as a whole against the exacting standard enunciated in Cupp v. Naughten, the Court cannot find that the trial court's "dangerous instrument" charge deprived Smith of a fundamentally fair trial. Thus, the Appellate Division's holding was neither "contrary to," nor an "unreasonable application of," governing Supreme Court precedent. As a result, this claim is dismissed.

    **4. Ineffective Assistance of Trial Counsel: Failure to Object to Identification Testimony at Wade Hearing**

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, Smith's challenge of trial counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Id., and may not second-guess defense counsel's strategy. Id. at 690.

Smith contends, as he did on appeal, that he was deprived of effective assistance of counsel in violation of his Sixth Amendment rights, based on his attorney's failure to object to testimony at the pre-trial Wade hearing. Specifically, he

alleges that trial counsel did not object to the lack of adequate notice, nor did trial counsel move to preclude the victim's testimony on this ground.

Prior to Smith's trial, the People filed a C.P.L. § 710.30 notice indicating an intention to introduce testimony by Manzella and Officers Wright and Jordan as to their identification of Smith on the date of his arrest. The notice also included a confirmatory photographic identification of Smith by Manzella and Officer Jordan in the Grand Jury. No further evidence was contained in the notice. Respondent notes that the notice filed by the People was deficient because it failed to inform Smith about Johnston's identification of him. Resp't Mem. 11 (Docket No. 9).

This court need not decide whether trial counsel's failure to object to this testimony lacked a strategic basis and was objectively unreasonable. Any error occasioned by the admission of the testimony by Johnston was harmless in light of the overwhelming evidence of Smith's guilt. The People still had the identification testimony of both Manzella and Officer Wright to support their proof. Further, defense counsel conducted extensive cross-examination of all three identification witnesses in an attempt to show the suggestiveness of the procedures and misidentification. Thus there is no reasonable

probability that the jury would have acquitted Smith of any of the charges had trial counsel objected, meaning that Smith cannot satisfy the "prejudice" prong of <u>Strickland</u>. 466 U.S. 668. Such a determination is not in violation of the Constitution of the United States under <u>Williams v. Taylor</u>, 529 U.S. 362, 375-76 (2000). As a result, this final claim is dismissed.

### CONCLUSION

For the reasons stated above, Kenneth Smith's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Smith has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253. The Court further certifies that pursuant to 28 U.S.C. § 1915(a)(3), any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    June 16, 2009
          Rochester, New York